**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| L.I. NATASHA GEDDIE, Individually, and d/b/a ACCORDIANS UNLIMITED, et al., | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | 3:06-CV-0895-R |
| NORMAN SEATON, PH.D., et al. | § § § | |
| *Defendants.* | § | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
FILED
August 8, 2006
CLERK, U.S. DISTRICT COURT

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motions to Dismiss for Failure to State a Claim (Dkt. No. 1), Plaintiff's Motion for Default Judgment Against Vikon Village Flea Market (Dkt. No. 1), and Defendant Jae Shim's Motion to Dismiss for Insufficiency of Process (Dkt. No. 14). For the reasons explained below, the Court dismisses the complaint for failure to state a claim, and therefore refrains from addressing the remaining pending motions.

### I.  BACKGROUND

**A. Procedural History**

Plaintiff L.I. Natasha Geddie ("Plaintiff" or "Geddie") is an accordion player who opened an accordion shop, Accordions Unlimited, at Vikon Village Flea Market in Garland, Texas, in November 2002.[1]  Defendants Norman Seaton ("Seaton"), Greg Klugiewicz ("Klugiewicz"), Judy Dillard ("Dillard"), and Nick Ballarini ("Ballarini"), are all individuals who participated in the

---

[1] Kimberly Maia-Danielle Geddie is a minor child on whose behalf Plaintiff brings suit for reasons that are unclear from the pleadings.

administration or promotion of various accordion associations, including the National Accordion Association ("NAA"), a non-profit Texas corporation that is also a defendant. Defendant Jae Shim ("Shim") is the owner of Vikon Village Flea Market ("Vikon" or "Vikon Village").

Confusion and mayhem have plagued this case from its inception. Plaintiff, proceeding pro se, filed her Original Petition on October 7, 2005, in 193rd Judicial District Court, Dallas County, TX, case no. 05-10356-L. She asserted the following claims against Defendants in her Original Complaint:

(1) The Accordion Defendants held themselves out to be directors of the Texas Accordian Association ("Claim 1");

(2) The Accordian Defendants defamed Plaintiff through libel and slander ("Claim 2");

(3) The Accordion Defendants violated state witness tampering laws ("Claim 3");

(4) The Accordion Defendants intentionally inflicted emotional distress ("Claim 4");

(5) Ballarini violated the provisions of the Fair Debt Collection Practice Act while attempting to collect debts owed on him by Plaintiff ("Claim 5");

(6) Dillard violated state non-profit laws ("Claim 6");

(7) Klugiewicz intentionally excluded Plaintiff from participation in the Addison Oktoberfest ("Claim 7");

(8) Seaton fraudulently promoted a scholarship program administered through Accordians Unlimited ("Claim 8");

(9) The Town of Addison failed to allow Plaintiff to participate in Oktoberfest ("Claim 9");

(10) Dallas Community College allowed Seaton and Sharon Seaton access to its resources for private use ("Claim 10");

2

(11) Vikon Village improperly withheld Plaintiff's property starting September 2005 after she failed to pay timely rent on her flea market stall ("Claim 11");

(12) Metroplex Psychiatric Associates refused to provide Plaintiff with her medical records for her bi-polar Type II disorder ("Claim 12").

Dallas Community College removed the case to this Court on November 10, 2005, on the basis of federal question jurisdiction.[2] On December 15, 2005, the Court granted a Motion to Dismiss that eliminated the only federal claim in this case. (Case No. 3:05-2216, Dkt. No. 10).[3] Specifically, in that Order, the Court dismissed Claim 6 under 12(b)(6) for failure to state a claim. The rest of the claims were dismissed under 12(b)(1) for lack of standing. The Court did not dismiss Claims 11 and 12, warning that if defendants were not properly served within 120 days after the filing of this complaint pursuant to Rule 4(m), these claims would also be dismissed without prejudice.[4] Accordingly, the case was remanded to the 193rd Judicial District Court, Dallas County,

---

[2] On December 15, 2005, the Court held a hearing on an injunction in which it granted Plaintiff's application for preliminary injunction to enjoin Defendant Vikon Village ("Vikon") from selling, auctioning, or otherwise disposing of Plaintiff's property, located at Vikon Village, 2918 S. Jupiter Road, Garland, Texas. (Case No. 3:05-2216, Dkt No. 5). On December 19, 2006, it came to the Court's attention that there was a possibility that Vikon had not received proper notice on the issued injunction. Therefore, the Court issued a preliminary injunction that extended the temporary restraining order for ten days, pending Vikon Village's request for rehearing in order to satisfy the notice requirements of a preliminary injunction. (Case No. 3:05-2216, Dkt No. 11).

[3] For whatever reason, although the Court issued its Order of Dismissal and Findings of Fact and Conclusions on Plaintiff's Application for Preliminary Injunction on the same day, the former was docketed on December 19, 2006, and the latter on December 20, 2006.

[4] Unfortunately, it is now clear to the Court that Vikon Village was actually served correctly under Rule 4. In the Appendix attached to Defendant's Notice of Removal. (Case No. 3:06-0895, Dkt. No. 1), Tab 22, labeled Plaintiff's Motion for Default Judgment, indicates that Vikon Village was indeed served by the Secretary of State on January 9, 2006 via its registered agent, Yoo Sang Cho Tchun Ji Corp. The Court did not receive these materials in any of the

TX pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction.

On January 19, 2006, Judge David Evans recused himself, and the case was transferred to the 298th Judicial District Court of Dallas County, Texas, where Plaintiff filed her Third Amended Petition on April 5, 2006. Shim was served on April 10, 2006. Vikon Village was served a second time on May 5, 2006. The case was again removed back to this Court on May 16, 2006 under federal question jurisdiction. (Case No. 3:05-0895, Dkt. No. 1). Each Defendant filed a Motion to Dismiss on May 18, 2006. (Case No. 3:05-0895, Dkt. No. 1). Plaintiff filed her response to Defendants' motions to dismiss on May 25, 2006. (Case No. 3:05-0895, Dkt. No. 5).

**B. Factual History**

In her Third Amended Complaint, the Plaintiff makes claims under the First Amendment and the Sherman Antitrust Act.

First, the Plaintiff alleges that her First Amendment right of free speech was violated when she was ticketed for criminal trespass. (Def. Not. of Removal Ex. 30 at 20). Her constitutional claim arises from the following sequence of events.

For approximately three years, Geddie rented a flea market stall at Vikon Village Flea Market (a Texas Corporation privately owned by Tchun Ji Corp). (Def. Not. of Removal Ex. 30 at 2). On or about October 29 or October 30, 2005, after a dispute with the Vikon manager concerning a rent payment, Geddie alleges that she was escorted away from Vikon by an off-duty Garland city police officer who was employed as a security guard by Vikon. (*Id*.). Immediately after this incident, Geddie returned to the premises with protest signs and began picketing on the easement

---

filings associated with Case No. 3:05-2216, and was told via telephone conversation on December 19, 2006, by Jae Shim, owner of Vikon Village, that he had not been served.

between Jupiter Road and Vikon's parking lot. (*Id.* at 9). In response, the security guard allegedly informed Geddie that Vikon had possession of the entire property up to the curb, cited her for criminal trespass, and warned Plaintiff that she would be arrested if she continued to protest in front of Vikon. (*Id.*).

Second, the Plaintiff contends that the Defendants have violated Section 2 of the Sherman Antitrust Act because of their actual monopolization, attempt to monopolize, and conspiracy to monopolize the accordion market in Texas and surrounding states. (*Id.* at 4). Geddie alleges that the combination and conspiracy have been in continuous existence since the fall of 2004. (*Id.* at 16), commencing with the spreading of a rumor by Klugiewicz that Geddie spit on a police officer in September 2004 and culminating in the exclusion of Geddie by Klugiewicz, Seaton and Ballarini from participating in various accordion festivals in Texas. (*Id.* at 17). Geddie claims that Dillard advised her in writing not to contact the NAA board members and that she has been restricted from membership in the NAA. In addition, she claims that Ballarini and Seaton have conspired with Shim and Vikon to ban her from her retail location at Vikon Village in order to purchase her accordions. (*Id.* at 17-18). Finally, Geddie claims that as a result of the alleged conspiracy, the power and influence of the NAA has been greatly increased, interstate trade and commerce in the accordion market has been so restrained that Defendant Ballarini is able to "charge exorbitant prices for accordion retail, repair and teaching services and for new and used accordions because Plaintiff was his only local competition and has been eliminated by the Defendants." (*Id.* at 19).

## II. ANALYSIS

Defendants NAA, Seaton, Dillard, and Ballarini have all filed motions to dismiss the Plaintiff's Third Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6)

and on grounds of res judicata.  There is also a pending motion to dismiss for insufficiency of Service of Process pursuant to Fed. R. Civ. P. 12(b)(5) filed by defendant Jae Lrr Shim ("Shim"). Finally, and there are pending motions for Default Judgment against defendants Vikon Village Flea Market, Shim, and Ballarini. Before the Court may address those motions, however, it must first address the defendants' motions to dismiss for failure to state a claim.

**A.  Rule 12(b)(6) Standard**

A motion to dismiss under Rule 12(b)(6) is disfavored in the law and rarely granted.  *See Thompson v. Goetzmann* 337 F.3d 489, 495 (5th Cir. 2003).  When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-movant.  *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).  The complaint will only be dismissed if it appears beyond doubt that the claimant can prove no set of facts in support of its claim that would entitle him or her to relief.  *See Campbell*, 43 F.3d at 975; *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).  However, to avoid dismissal, a court need not accept as true conclusory allegations or unwarranted deductions of fact.  *Collins v. Morgal Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  When a "conclusory allegation" or an "unclear question of law" appears within the factual allegations of the complaint, the court retains discretion to construe that issue against the plaintiff.  *See, e.g., Kansa Reinsurance Co., Ltd. V. Cong. Mortgage Corp. Of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994) ("While the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff.").

In ruling on a Rule 12(b)(6) motion, "courts must limit their inquiry to the facts stated in

the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). The court may, however, take judicial notice of documents in the public record and may consider them in ruling on the motion. *R2 Investments LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005) (citing *Lovelace*, 78 F.3d at 1017-18).

**B. First Amendment**

Geddie alleges that her First Amendment right of free speech was violated when she was ticketed for criminal trespass on private property. To prove a violation of the First Amendment right to free speech, the Plaintiff must either demonstrate that Jae Shim, as the owner of Vikon Village, is a state actor, or that Vikon Village is nevertheless a public forum despite the fact that it is privately owned. The Court finds that she has failed to plead both.

The Supreme Court first found that a private property owner can be a state actor for First Amendment purposes in *Marsh v. Alabama*, 326 U.S. 501 (1946). In that case, the Court concluded that the property interests of Gulf Shipbuilding Corporation, the private owner of a company town that did "not function differently from any other town," *id.* at 508, did not allow the company to regulate speech more strictly than a municipality. *Id.* at 508-09. The Court later applied the public function rationale to cases involving other constitutional rights. For example, in *Evans v. Newton*, the Court found that a private entity performs a public function when it operates a park that is public in nature. 382 U.S. 296, 302 (1966) ("[T]he public character of this park requires that it be treated as a public institution subject to the command of the Fourteenth

7

Amendment, regardless of who now has title under state law.").[5]

At one point, the Supreme Court expanded the public function doctrine to encompass the activities of a private shopping center. *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.*, 391 U.S. 308 (1968). However, the Court later overruled this expansion. *Hudgens v. NLRB*, 424 U.S. 507, 518 (1976) ("[W]e make clear now, if it was not clear before, that the rationale of *Logan Valley* did not survive the Court's decision in [*Lloyd Corp. v. Tanner*, 407 U.S. 551 (1972) ].").

Accordingly, the public function doctrine has essentially been limited to the facts of *Marsh* and *Evans*, which differ greatly from the facts of the case at hand. The easement[6] between the street and the parking lot of Vikon does not bear marks of a typical municipality's attributes, as existed in *Marsh*. And unlike *Evans*, which involved a city's attempt to enforce racially restrictive covenants governing a privately owned park maintained by the city, there are no facts presented here that show Vikon Village is operated or maintained by the city of Garland. There is simply no case that Plaintiff can point to in which a court has found that a private entity's control is so pervasive that it is performing a public function. The speech restrictions by Vikon Village do not constitute state action under the public function doctrine.

In the alternative, Plaintiff might be successful if she could show that Vikon Village is a

---

[5] The Court later explicitly limited *Evans* to the unique facts involved. *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 159 n.8 (1978) (noting that *Evans* involved "extraordinary circumstances" and distinguishing that case because there was "actual involvement of the city in the daily maintenance and care of the park").

[6] At least one federal court has not distinguished the use of an easement in an analogous first amendment inquiry. *See Weis Markets, Inc. v. N.L.R.B.*, 265 F.3d 239, 247 (4th Cir. 2001).

public forum. Private property does not, however, become a public forum simply because a private owner opens his property to the public. *Hudgens*, 424 U.S. at 519-21; *Lloyd Corp.*, 407 U.S. at 569. In *Lloyd Corp. v. Tanner,* the Supreme Court refused to extend first amendment protection to protesters distributing anti-war handbills within a privately owned shopping center. *Id.* at 552. While the Plaintiff sought to protest Vikon's business practices, the reasoning in *Tanner* applies nevertheless - Plaintiff's right to freedom of expression does not outweigh the right of Vikon's owner to restrict the purposes for which the public uses his property. *Id.* at 570; *see also Hudgens v. NLRB*, 424 U.S. 507, 518 (1976) (holding that employees did not have a first amendment right to enter a privately owned shopping center to advertise their strike on one of the retail stores located inside); *Bodzin v. City of Dallas*, 768 F.2d 722 (5th Cir. 1985) (finding that a grocery store was not a public forum for the purposes of first amendment activity); *Reeves v. McConn*, 631 F.2d 377, 384 (5th Cir. 1980) (holding that the use of shopping centers for the exercise of First Amendment activities depends upon the consent of the owners).

As Geddie can prove no set of facts in support of her claim which would entitle her to relief, her First Amendment complaint is dismissed.

## C.  Sherman Antitrust Act § 2

Section 2 of the Sherman Antitrust Act denounces three actions: (1) actual monopolization, (2) attempt to monopolize, and (3) conspiracy to monopolize. 15 U.S.C. § 2; *Mississippi Communications, Inc. v. Jones*, 792 F.2d 1330, 1335 (5th Cir. 1986). The Plaintiff's claims rest on her allegations that the Defendants, as a whole, constitute a monopoly, are attempting to monopolize, and are engaged in a conspiracy to monopolize the relevant market in violation of Section 2 of the Sherman Act.   (Def. Not. of  Removal Ex. 30 at 18-19).

**1. Standard**

"[Section] 2 addresses the actions of single firms that monopolize or attempt to monopolize. . . The purpose of the Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market." *Spectrum Sports Inc. v. McQuillan*, 506 U.S. 447, 454 (1993).[7] Under this statute, the defendant must "use. . . monopoly power 'to foreclose competition, to gain a competitive advantage, or to destroy a competitor.' " *Eastman Kodak*, 504 U.S. at 482-83 (quoting *United States v. Griffith*, 334 U.S. 100, 107 (1948)). With regards to Defendant NAA (allegedly a non-profit organization), the Supreme Court has held that a non-profit organization is not exempt from antitrust laws. *See American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.* 456 U.S. 556, 576 (1982).

While there is no heightened pleading requirement in antitrust cases, *see Hammes v. AAMCO Transmissions*, Inc., 33 F.3d 774, 778 (7th Cir.1994), claims under the Sherman Antitrust Act must include "allegations covering all the elements that comprise the theory for relief" to survive a Rule 12(b)(6) challenge. *United States v. Employing Plasterers Ass'n,* 347 U.S. 186, 189 (1954); *Municipal Utilities Bd. of Alberville v. Alabama Power Co.*, 934 F.2d 1493, 1501 (11th Cir.1991) ("A plaintiff must plead sufficient facts so that each element of the alleged antitrust violation can be identified."); *Nelligan v. Ford* Motor Co., 262 F.2d 556, 559 (4th Cir.1959) ("[A] complaint which does not allege with reasonable definiteness facts from which the court may infer conduct. . . prohibited by the antitrust laws, and from which an

---

[7] § 2 states, in relevant part, that "every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony...." 15 U.S.C. § 2.

inference of public injury may reasonably be extracted, cannot be sustained."). Provided the Plaintiff has described a defendant's practice in a manner consistent with its antitrust theory, the court considers only whether other allegations made in the complaint undermine the claim. *See Hammes*, 33 F.3d at 782.

**2. Relevant Market**

As a prerequisite to any antitrust claim, the Plaintiff must allege a relevant market in which the anticompetitive effects of the challenged activity can be assessed. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 29 (1984)*; Apani Southwest, Inc. v. Coca Cola Enter., Inc.*, 300 F.3d 620, 626, 628 (5th Cir. 2002). "Without a definition of the relevant market, there is no way to measure a company's ability to act as a monopolist." *United States v. Eastman Kodak Co.,* 63 F.3d 95, 104 (2d Cir.1995). Thus, the Court will first consider whether the Plaintiff has successfully identified the a relevant market. *Apani Southwest, Inc.*, 300 F.3d at 626, 628.

A relevant market is comprised of a market for the specific product at issue, the market for reasonably interchangeable products, and a geographic market, or the area in which sellers of the relevant product effectively compete. *See United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 395 (1956). Whether a relevant market has been identified is usually a question of fact; however, in some circumstances, the issue may be determined as a matter of law. *Seidenstein v. Nat'l Med. Enters., Inc.*, 769 F.2d 1100, 1106 (5th Cir.1985). The Plaintiff must identify the relevant product and geographic markets in compliance with the rules of "reasonable interchangeability" and "cross-elasticity of demand." *Apani Southwest, Inc.*, 300 F.3d at 626, 628 (dismissing the plaintiff's Sherman Act claim for failure to plead a relevant market); *Rockbit*

*Indus. U.S.A., Inc. v. Baker Hughes, Inc.,* 802 F. Supp. 1544, 1550-51 (S.D.Tex. June 24, 1991) (same).  That is, courts analyzing whether a plaintiff has met its burden should consider both the "extent to which the seller's product is 'interchangeable in use' and the degree of 'cross-elasticity of demand between the product itself and substitutes for it." ' *Id.*

The Plaintiff states in her Third Amended Complaint that the relevant product market is "the accordion market, particularly in North Texas, and several adjoining states, Canada and Mexico."  (Def. Not. of Removal Ex. 30 at 7).  In the Fifth Circuit, the relevant geographic market must "correspond to the commercial realities of the industry and be economically significant."  *Apani*, 300 F.3d at 628.  Plaintiff has identified "North Texas, and several adjoining states, Canada and Mexico" as the relevant geographic market. (Def. Not. of Removal Ex. 30 at 7).  Yet, the Plaintiff pleads that there has been an antitrust violation because "Plaintiff was his (Ballarini's) only *local* competition" and she has now been eliminated.  (Def. Not. of Removal Ex. 30 at 19).   Thus, the Plaintiff asserts a very broad geographic market (United States, Canada, Mexico) but claims that competition has been affected only locally.

Due to the blatant inconsistency in pleadings, the Plaintiff does not allege, with reasonable definiteness, facts from which this Court may infer conduct in restraint of trade of the kind prohibited by § 2 of the Sherman Act, and from which any inference of public injury may reasonable be extracted.  To find otherwise would "go against the purpose of antitrust laws and of the Sherman Act, which is meant to protect the viability of competition, not the individual competitors."  *Skidmore Energy, Inc. v. KPMG*, 2004 WL 3019097 (N.D.Tex. Dec. 28, 2004).

Because the Plaintiff has failed to plead a relevant antitrust market, her Sherman Antitrust Act § 2 complaint is dismissed.  Furthermore, as discussed below, even if the Plaintiff

had identified the relevant product and geographic markets, her antitrust claims would have failed on other grounds.

**3. Actions Prohibited by 15 U.S.C. § 2**

    (**a**) **Actual Monopolization**

Monopolization consists of two elements: (1) the possession of monopoly power in the relevant market and (2) the wilful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Alcatel USA, Inc. V. DGI Technologies, Inc.*, 166 F.3d 772, 781 (5th Cir. 1999). The monopoly power elements concern the "power to control prices or exclude competition." *Stewart Glass & Mirror, Inc., v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 315 (5th Cir. 2000).

First, as discussed above, the Plaintiff has failed to identify the relevant market. Second, although the Plaintiff states that all Defendants were involved in the restraint of trade and did constitute a monopoly, the facts she provides do not support this allegation. In fact, the only claim of controlling prices concerns Defendant Ballarini, and Plaintiff does not assert that Ballarini has controlled prices, only that he is "*able* to institute a method of price fixing" since his only competition, the Plaintiff, has been eliminated. (Def. Not. of Removal Ex. 30 at 18-19).[8] The Plaintiff has not pleaded facts to support the claim of actual monopolization against any of the Defendants. As a result, her claims regarding actual monopolization fail.

---

[8] In another peculiar contradiction, while the Plaintiff claims that she is Defendant Ballarini's only competitor, she also claims that Defendants Klugiewicz and Dillard are in the accordian business. There is no mention as to why they are not Defendant Ballarini's competitors.

13

### (c) Attempted Monopolization

In regards to attempted monopolization, the Supreme Court has stated that a plaintiff must show (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc.,* 506 U.S. at 456.  In determining whether there is a "dangerous probability of monopolization," it is necessary to consider the relevant market and the defendant's ability to lessen competition in that market.  *Id.*  Further, proof of unfair or predatory conduct alone is not sufficient to make out the offense of attempted monopolization, for that would be contrary to the purpose and policy of the Sherman Act.  *Id.* at 457.  The purpose is to protect the public from a failure of the market, not to protect a business from the workings of the market.  *Id.* at 458.

The Plaintiff has generally alleged that *all* Defendants were involved in the conspiracy, however she only presents facts concerning an alleged attempted monopoly by Defendant Ballarini.   Specifically, she claims that as a result of the alleged conspiracy among all Defendants, Defendant Ballarini is able to "institute a method of price fixing[9] to charge exorbitant prices for accordion retail, repair and teaching services and for new and used accordions because Plaintiff was his only local competition and has been eliminated by the Defendants."  (Def. Not. of  Removal Ex. 30 at 19).  For the same reasons given as to why the Plaintiff has failed to adequately plead a claim for actual monopolization, the Plaintiff has failed to sustain a claim for attempted monopolization against any one of the Defendants.

---

[9] It should be noted that "price fixing" is generally a charge associated with § 1 of the Sherman Act.  *TCA Bldg. Co. v. Northwestern Resources Co.*, 861 F. Supp. 1366, 1378 (S.D.Tex. Sept. 1, 1994)  (noting that price fixing agreements are per se illegal under § 1 of the Sherman Act).

**(d) Conspiracy to Monopolize**

A conspiracy to monopolize can be established only through proof of "(1) the existence of specific intent to monopolize; (2) the existence of a combination or conspiracy to achieve that end; (3) overt acts in furtherance of the combination or conspiracy; and (4) an effect upon a substantial amount of interstate commerce." *Stewart Glass & Mirror,* 200 F.3d at 316. If Geddie had adequately pleaded a relevant market, and that market was indeed "Texas, adjoining states, Canada, and Mexico," as she alleges, she would have feasibly met the fourth element. It is clear, however, that she has not come close to meeting the remaining three.

The plaintiff must allege facts sufficient to show that there was joint or concerted action among more than one of the defendants. *Skidmore Energy, Inc.,* 2004 WL 3019097 at 6. In order to do this, Geddie must allege facts which, if true would support the existence of a conspiracy among the Defendants and support the existence of a motive for Defendants Seaton, Shim, Klugiewicz, Dillard, Ballarini, NAA, and Vikon. *Id.*

First, Defendants Seaton, Klugiewicz, Dillard, and Ballarini are all members of Defendant NAA. (Def. Not. of Removal Ex. 30 at 4). Defendant Dillard is vice president and treasurer of the association, and Defendants Seaton, Klugiewicz, and Ballarini are all members of the board of directors of the NAA. *Id.* However, "as a matter of law, a corporation and its agent [i.e., NAA and the above named Defendants] are incapable of conspiring with one another to violate the antitrust laws." *Surgical Care Center of Hammond v. Hospital Service District* 309 F.3d 836, 841 (5th Cir. 2002).

Second, as to Defendants Shim and Vikon, the only facts alleged are that Ballarini and Seaton "entered agreements with Shim, an owner of Vikon Village Flea Market, to ban Geddie

15

from Vikon so they could purchase some or all Plaintiff's business and personal property at Vikon and, in effect, monopolize the accordion market." (Def. Not. of Removal Ex. 30 at 7). Plaintiff was then "suddenly locked out of her retail location" by Defendants Shim and Vikon. (Def. Not. of Removal Ex. 30 at 7). Even if these facts are true, and the Court must assume they are, the Plaintiff has not shown motive or intent to engage in a conspiracy as to Defendants Shim and Vikon. This leaves Defendant Ballarini, and as he cannot engage in a conspiracy by himself, the Plaintiff has not shown an anti-competitive conspiracy.

### III. CONCLUSION

Based on the facts before the Court, the Court GRANTS Defendants' motions to dismiss for failure to state a claim, and DISMISSES all pending motions.

**ENTERED:   August 8, 2006**
**It is so ORDERED.**

*Jerry Buchmeyer*

_____
**JERRY BUCHMEYER,**
**SENIOR UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**